MILLER, Judge.
Plaintiffs appeal adverse judgments in three consolidated lawsuits arising out of a fire of unknown origin which destroyed a one-roof building housing three businesses. The fire occurred in the business district of Bunkie at noon on December 11, 1968. In this opinion we consider the merits of each of the three suits but hand down separate decrees.
The original suit was filed by the subro-gated fire insurer National Surety Corporation and the insured lessor-property owner, Phillip P. Guiffre, M.D., against James L. Wilson and Montgomery Ward & Co., Incorporated, tenants of a portion of the common building which housed these businesses. Plaintiffs did not seek damages for the loss of that portion of the building which housed Montgomery Ward. Thereafter, other plaintiffs filed petitions against the same defendants. First, Aetna Insurance Company as subrogee of Dr. Guiffre claiming damage to a nearby building; then Travelers Insurance Company, as subrogee of another business housed in the same building which housed Montgomery Ward, E. Z. Shop, Inc., claiming damage to fixtures and merchandise. Defendants answered all appeals and seek damages against all parties plaintiff.
The trial court assigned written reasons from which we quote the following:
“Dr. Phillip Guiffre leased certain improved real estate in Bunkie, La., to James L. Wilson, who intended to operate a mail order retail outlet for Montgomery Ward & Co. The lease, in writing, was executed (November 30, 1968), and Lessor had agreed to do certain alterations upon the premises leased (on or before December 9, 1968), to accommodate the wishes of Lessee. These repairs and alterations, it seems, were completed on or about noon of December 10, 1968. The carpenters discarded some pieces of lumber, scraps, sawdust, etc., and put up some usable scraps on a loading platform in the rear of the building. The carpenters had helped Wilson to open the back door of the building, which opened onto the loading platform, by removing screws to the padlock hasp and hinges, since that large door was fastened closed, by a padlock and the keys thereto had been misplaced (by the Lessor). After the carpenters left, James Wilson and his helpers (in the afternoon of December 10, 1968) unpacked the crated and boxed merchandise which had arrived by loaded van, several days before, for display in the rented building. The empty cartons, boxes, wooden bases, were admittedly thrown outside, back of the leased building, next to the loading dock or platform at the rear of the building leased by Wilson from Guiffre.
“About 6:30 p. m. to 7:00 p. m. the evening of December 10, 1968, the Wilson em *404 ployees and Ward employees, prior to leaving, re-fastened the hinges and hasp to the large back door of the building by again putting in the screws and drawing them tight with a screwdriver. The next day, December 11, 1968, was to be opening day for the new store. The large back door, fastened as aforesaid, was not re-opened or used by anyone. The business or store was opened about 8:00 a. m. on December 11, 1968. About 12:00 Noon, one of the employees, inside the building, noticed smoke coming into the building from its rear side, near the ceiling level. There was no fire inside. About the same time, a witness, Mrs. Goux, who lives on Lexington Avenue, to the rear of the building, noticed a large fire and smoke at the loading platform or loading dock, in the rear of the leased building. She said the fire was outside the building, near this loading platform, and where the empty boxes had been thrown, but when she first noticed same, the side of the back door frame was also afire. Before it could be controlled, the fire spread into the leased building and to two other establishments and destroyed same.
“There is no evidence as to how the fire started. The Court believes and finds that it did start where the empty boxes were thrown the day before. Fire Chief Johns said he probed, afterwards, and came to the conclusion it had originated there; He found partially burned bread wrappers, (wood shavings and some loose pieces of cardboard, TR. 447) at the bottom of the ashes there. As the Court recalls it, he indicated that perhaps there were food scraps, milk containers, etc., to give the impression, workmen had discarded such after eating lunch.
“The suits claim this stacking of the boxes, containers, etc., outside, were acts of negligence causing the fire; or in the alternative, the building was in the exclusive control of defendants, and the doctrine of Res Ipsa applies.
“Two witnesses testified that Mr. Rios Montavo, Guiffre’s son-in-law (and agent), had stated to the Wilson Employees, on the previous day, (December 10th) that when he removed his carpenter’s scraps, he would haul away the other trash and empty boxes at the same time. He, himself, admitted a conversation along these lines, but his version was that he had asked the Wilson Employees if they wanted him to haul same away, and had received no reply. However, it seems clear, that whatever the carpenters had left * * * scraps, sawdust, etc., the day before, such was still there when the fire started on December 11, 1968. Nothing had been removed from the rear of the building.
“The Court finds and holds, that from the evidence, it cannot be determined how the fire started, and much less, who started the fire. There is simply no evidence here and as in all cases, a plaintiff must make out his case by a preponderance of the evidence.
“The Court cannot hold, and will not hold, that the mere throwing of empty boxes, in the area where the fire started, would make defendants liable. Perhaps this would be so if there had been a fire there before; or slow burning trash there, when they dumped the boxes, but that is not the case.
“The Court believes and holds that the doctrine of Res Ipsa is not applicable here; this is not the case of a dangerous instrumentality in the possession and controls of defendants. There were mere empty boxes that had been discarded there, less than twenty-four hours before the fire. The Court cannot hold that this alone, would make defendants liable for the fire which ensued. The rear of the building was not fenced; it was a sort of open alley; it could be reached from at least two entrances, and there are all sorts of possibilities which the Court can envision, as having caused the fire. There is not one scintilla of evidence that any of the boxes or discards or contents had scraps or materials inherently dangerous or which might have been susceptible of spontaneous combustion.”
*405 To these findings we add that the leased premises were located within the “fire zone” area of Bunkie and the requirement that alterations be made of fireproof materials was not met; that lessor did not get the required building permits before altering (moving a wall, rewiring and replumbing) the building to meet the terms of the lease. Furthermore, lessor did not seek amendment to his insurance contract to comply with article 9 of the written lease (prepared by lessor), providing:
“9. LOSS OR DAMAGE BY FIRE OR THE ELEMENTS — INSURANCE. “The Lessee shall not be liable for any loss or damage to the premises caused by fire or the elements, whether or not such loss or damage shall result from the Lessee’s negligence. At all times after the execution hereof, the Lessor shall carry fire and extended coverage insurance on the improvements on the premises, endorsed to show that the right of recovery against the Lessee has been waived.”
Additionally, there was no ordinance prohibiting the placing of cardboard boxes, etc., beside the building.
We hold that Dr. Guiffre is bound by his son-in-law agent Montalvo’s agreement to remove the boxes and other debris placed by Montgomery Ward beside the loading dock.[1]
*406 Appellants contend that the actions and inactions of Wilson and Montgomery Ward in allowing this large trash pile to accumulate so close to the rear of their building and loading dock before the fire started, together with their failure to place a watchman over or water down the refuse, constitutes negligence; that under Civil Code Articles 2710, 667, 2721 and 2723, defendants are responsible for the fire. They do not find a case in point.
Wilson and Montgomery Ward are free from fault. The obligation to remove the items on or beside the loading dock had either always been Lessor’s obligation or had been assumed by Lessor’s agent. Some of the material at the site of the fire was there prior to the November 30, 1968 lease. Other materials were placed there by Lessor’s workmen while making alterations to meet the requirements of the lease. Lessor’s agent, while supervising the alterations, agreed to remove the cardboard boxes, etc. which Wilson and Montgomery Ward added to the pile of trash.
The doctrine of res ipsa loquitur is not applicable in these suits. The evidence established that causes other than the alleged negligence of Wilson and Montgomery Ward were also a probable cause of the fire. Schulingkamp v. Bolton Ford, Inc., 163 So.2d 161 (La.App. 4th Cir. 1964); Lutheran Church of Good Shepherd of Baton Rouge v. Canfield, 233 So.2d 331 (La.App. 1st Cir. 1970).
The judgments in favor of defendants Wilson and Montgomery Ward are affirmed.
Wilson and Montgomery Ward reconvened against Dr. Guiffre and seek damages in the amount of $12,206.12 representing their property loss and expenses incurred as a result of the fire.
We find Dr. Guiffre to be responsible for his agent Montalvo’s failure to clear the stored lumber, debris and cardboard boxes, etc., from the loading dock. Was this a proximate cause of the fire?
While we find the issue close, we do not find manifest error in the trial court’s holding that the existence of the pile of trash and lumber was not a proximate cause of the fire.
The following factors support this conclusion. There was no ordinance requiring the removal of these items. The cardboard boxes had been near the loading dock less than 24 hours. The area where the fire started is remote and rather difficult to reach. Not one of the more than twenty witnesses considered the presence of the “trash” to present a potentially dangerous situation, prior to the fire.
Wilson and Montgomery Ward also sought reimbursement of attorney’s fees and costs incurred in defending these lawsuits, citing LSA-C.C. arts. 2768, 2769, and 1930. The cited codal articles do not apply. The manner in which Dr. Guiffre altered the premises was not a proximate cause of this fire or of the damage. There were no alterations in the area where the fire started.
Part of this claim is based on the failure of Dr. Guiffre to have his insurance policy “endorsed to show that the *407 right of recovery against the Lessee has been waived.” This too is denied. No party sued for the loss of that part of the premises occupied by Montgomery Ward. Article 8 of the lease contract affected only the premises occupied by Montgomery Ward.
The judgment rejecting the reconven-tional demand is affirmed. All costs of this appeal are taxed one-half to plaintiffs and one-half to defendants.
Affirmed.

. Mr. James L. Wilson testified on cross-examination at Tr. 505:
“Q. Now, Sir, did yon have any particular understanding with anyone about how this was going to he disposed of * * * any of the trash?
“A. Yes, sir.
“Q. And who was that with?
“A. Mr. Montalvo and I were looking over the material at the .rear of the building, must have been on the 10th, and at this time he pointed out to me certain materials that were on the job, that he said he wanted left on the dock because he wanted to use these materials in a hunting camp that he was building or something of this nature and he said at this time that * * * these other materials — could be put on the ground with the other materials and at this time, I mentioned that we would have to get a truck or something to haul off boxes and what not and h|f suggested that: Well, since he was going to have to get a man to haul his material off and he would just make him haul off the boxes at the same time.”
Wilson testified that the landlord’s material was on the ground and on the dock and consisted of sawdust, a sheet or two of plywood and mostly framing material. Also there was feed sacks and other items which appeared to have been piled there for more than a year. Tr. 506.
Again at Tr. 612, Wilson testified concerning the boxes and trash placed near the loading dock:
“Q. What did you do about all that trash back there that you saw, the night before the fire?
“A. I did nothing about that * * * there was an understanding between Mr. Montalvo and I that * * * about what was to be done with it. I had talked to him earlier and he had said that he had a man who would haul off the building material and he would get him to haul off the entire amount off because I had said I would have to borrow a truck ’cause I didn’t own a truck.”
Mr. Herman Moore, employee of Montgomery Ward testified under cross-examination that while having coffee with Montalvo on December 10th (at the bus station), Montalvo told him
“ * * * that he would have the trash hauled off when the man came to pick up the stuff he had back there (by the loading dock).” Tr. 643. See also 644.
Mr. Moore testified that following this conversation with Montalvo, he no longer worried about the removal of these boxes. Tr. 646. (There were some 8 or 10 cardboard boxes in which refrigerators, television sets or other large items were shipped, and some 50 smaller cartons in which toasters, blenders, coffee makers, etc. were shipped. The smaller boxes were crushed inside the larger ones.)
Mr. Rios Montalvo testified on cross-examination at Tr. 559 that on December 10 while informing a Montgomery Ward employee that Montalvo had been required to build a storage bin to receive such boxes when Montalvo was the Montgomery Ward representative * * *.
“ * * * I also mentioned the fact *406 that * * * if he would want me to I would take care of the boxes * * * have them hauled away since they were in a jam and they were trying to get the store open. Well, I never received any comment one way or the other, so I figured : Well, they will take care of them themselves and that’s when I left.
“Q. You didn’t make any agreement with him to move the boxes?
“A. Not as such: No, I simply made the * * * made an offer to do so and when I received no reply to this offer, so I figured: Well, he’ll take care of his own boxes and just took off.”
The trial court is completely supported in the finding that Montalvo did not remove the debris and lumber, etc. which he had either caused to be placed on and below the loading dock, or was at least obligated to remove.